UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

Civil No.

Honorable

Magistrate Judge

TWO HUNDRED FIFTY NINE THOUSAND
SEVEN HUNDRED NINETY SEVEN DOLLARS
AND SIXTY CENTS ($259,797.60) IN U.S.
CURRENCY FROM SUN TRUST BANK
ACCOUNT NO. XXXXXXXX4909;

SIXTY NINE THOUSAND DOLLARS ($69,000)
IN U.S. CURRENCY FROM COMERICA BANK
ACCOUNT NO. XXXXXX7696;

EIGHTEEN THOUSAND EIGHT HUNDRED
SIXTY DOLLARS AND THIRTY SIX CENTS
($18,860.36) IN U.S. CURRENCY FROM
COMERICA BANK ACCOUNT NO. XXXXXX5407;

SIX THOUSAND FIVE HUNDRED EIGHTEEN
DOLLARS AND TWO CENTS ($6,518.02) IN U.S.
CURRENCY FROM COMERICA BANK ACCOUNT
NO. XXXXXXX6516;

FIVE THOUSAND FIFTY TWO DOLLARS AND
EIGHTY CENTS ($5,052.80) IN U.S. CURRENCY
FROM COMERICA BANK ACCOUNT
NO. XXXXXX8583;

ONE HUNDRED FIFTY THOUSAND DOLLARS
($150,000) IN U.S. CURRENCY SEIZED AT
XXX86 WESTMORE, LIVONIA, MICHIGAN;

ONE HUNDRED EIGHTY THOUSAND
DOLLARS ($180,000) IN U.S. CURRENCY
SEIZED AT XXX86 WESTMORE, LIVONIA,
MICHIGAN;

FOURTEEN THOUSAND THREE HUNDRED
SIXTY DOLLARS ($14,360) IN U.S.
CURRENCY SEIZED AT 7821 TELEGRAPH
ROAD LOCATED IN TAYLOR, MICHIGAN;

SEVEN THOUSAND FOUR HUNDRED
DOLLARS ($7,400) IN U.S. CURRENCY SEIZED
FROM 69XX FALCON COURT, WEST
BLOOMFIELD, MICHIGAN;

TWO THOUSAND FIVE HUNDRED DOLLARS
($2,500) IN U.S. CURRENCY SEIZED FROM
100 E. BIG BEAVER #905, TROY, MICHIGAN;

THREE THOUSAND FOUR HUNDRED
FOURTY NINE (3,449) ASSORTED CELLULAR
TELEPHONES AND ELECTRONIC DEVICES
SEIZED AT 7821 TELEGRAPH ROAD, TAYLOR,
MICHIGAN;

SEVEN HUNDRED NINETY THREE (793)
ASSORTED ELECTRONIC DEVICES AND
EQUIPMENT SEIZED AT 7821 TELEGRAPH
ROAD, TAYLOR, MICHIGAN;

FIFTY NINE (59) ASSORTED BLACKBERRY
CELLULAR TELEPHONES SEIZED AT THE
DETROIT METROPOLITAN AIRPORT CARGO

OFFICE IN ROMULUS, MICHIGAN;

FIFTY FIVE (55) APPLE IPHONES ADDRESSED TO HONGSHUN TECHNOLOGIES IN HONG KONG AND SEIZED AT DETROIT METROPOLITAN AIRPORT IN ROMULUS, MICHIGAN;

FIFTEEN (15) ASSORTED ELECTRONIC EQUIPMENT ITEMS SEIZED AT 69XX FALCON COURT, WEST BLOOMFIELD, MICHIGAN;

ONE (1) SAMSUNG CELLULAR PHONE AND ONE (1) APPLE IPHONE SEIZED AT 69XX FALCON COURT, WEST BLOOMFIELD, MICHIGAN;

ONE (1) T-MOBILE BOLD MODEL SEIZED AT 69XX FALCON COURT, WEST BLOOMFIELD, MICHIGAN;

NINE (9) ASSORTED CELLULAR TELEPHONES SEIZED AT 100 E. BIG BEAVER ROAD #905, TROY, MICHIGAN;

ELEVEN (11) ASSORTED ELECTRONIC EQUIPMENT ITEMS SEIZED AT 207XX ISLAND LAKE, TAYLOR, MICHIGAN;

ONE (1) APPLE IPHONE AND ONE (1) SONY ERICSSON CELLULAR PHONE SEIZED AT 207XX ISLAND LAKE, TAYLOR, MICHIGAN;

ONE (1) BLACKBERRY MODEL 9870 SEIZED AT 207XX ISLAND LAKE, TAYLOR, MICHIGAN;

ONE (1) .40 CALIBER HK SMITH & WESSON HANDGUN, SERIAL #219006297 SEIZED AT 69XX FALCON, WEST BLOOMFIELD, MICHIGAN

ONE (1) .38 CALIBER SMITH & WESSON SPL
REVOLVER, SERIAL #C684065 SEIZED AT
69XX FALCON, WEST BLOOMFIELD, MICHIGAN

THIRTEEN (13) ROUNDS OF .40 CALIBER
AMMUNITION SEIZED AT SEIZED AT 69XX
FALCON, WEST BLOOMFIELD, MICHIGAN

SIX (6) ROUNDS OF .38 CALIBER AMMUNITION
SEIZED AT 69XX FALCON COURT, WEST
BLOOMFIELD, MICHIGAN;

ONE (1) .40 CALIBER AMMUNITION MAGAZINE
SEIZED AT 69XX FALCON COURT, WEST
BLOOMFIELD, MICHIGAN;

ONE (1) .44 RUGER REVOLVER, SERIAL:85-92714
SEIZED AT 100 E. BIG BEAVER ROAD, TROY,
MICHIGAN;

SIXTY-SIX ROUNDS (66) OF .44 CALIBER GOLD
DOT AMMUNITION SEIZED AT 100 E. BIG
BEAVER ROAD #905, TROY, MICHIGAN;

TWENTY ROUNDS (20) ROUNDS OF .40 CALIBER
DPX AMMUNITION SEIZED AT 100 E. BIG
BEAVER ROAD #905, TROY, MICHIGAN;

FOUR (4) ROUNDS OF .44 CALIBER REMINGTON
AMMUNITION SEIZED AT 100 E. BIG BEAVER
ROAD #905, TROY, MICHIGAN;

ONE (1) FIREARM MAGAZINE SEIZED AT
100 E. BIG BEAVER ROAD, #905 TROY,
MICHIGAN;

ONE (1) GLOCK 23 FIREARM, SERIAL NO: SDX263
SEIZED AT 207XX ISLAND LAKE, TAYLOR,

MICHIGAN;

ONE (1) MAADI 7.62X39 FIREARM, SERIAL:
CAI01671 SEIZED AT 207XX ISLAND LAKE,
TAYLOR, MICHIGAN;

THIRTEEN (13) FRANKLIN GUN SAFES SEIZED
AT 7821 TELEGRAPH ROAD, TAYLOR,
MICHIGAN;

FORTY FIVE (45) ASSORTED HOUSEHOLD
ITEMS/TOOLS SEIZED AT 7821 TELEGRAPH
ROAD, TAYLOR, MICHIGAN;

Defendants *In Rem.*

_____/

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through

BARBARA L. McQUADE, United States Attorney for the Eastern District of

Michigan, and GJON JUNCAJ, Assistant United States Attorney, and states upon

information and belief as follows in support of this Complaint for Forfeiture:

1.  This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C),

    18 U.S.C. § 981(a)(1)(A), and 19 U.S.C. § 1595a resulting from violations of

    13 U.S.C. § 305, 18 U.S.C. §§ 554, 1028, 1343, 2314, 1956 and 1957.

2.  This Court has subject matter jurisdiction over this proceeding pursuant to:

    a.    28 U.S.C. § 1345 as this action is being commenced by the United

          States of America as Plaintiff; and

b.    28 U.S.C. § 1355(a), because this is an action for forfeiture.

3.    This Court has *in rem* jurisdiction over this proceeding pursuant to:

a.    28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Eastern District of Michigan; and

b.    28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1395.

4.    Venue is proper before this Court pursuant to 28 U.S.C. § 1395(b), as the defendants *in rem* were found in the Eastern District of Michigan.

## **DEFENDANTS *IN REM***

5.    The defendants *in rem* in this action consist of the following:

a.    Two Hundred Fifty Nine Thousand Seven Hundred Ninety Seven Dollars and Sixty Cents ($259,797.60) in U.S. Currency from Sun Trust Bank Account no. XXXXXXXXX4909 on or about October 22, 2012;

b.    Sixty Nine Thousand Dollars ($69,000) in U.S. Currency from Comerica Bank Account No. XXXXXX7696 on or about October 29, 2012;

c.    Eighteen Thousand Eight Hundred Sixty Dollars and Thirty Six Cents ($18,860.36) in U.S. Currency from Comerica Bank Account no. XXXXXX5407 on or about October 29, 2012 ;

d.    Six Thousand Five Hundred Eighteen Dollars and two cents ($6,518.02) in U.S. Currency from Comerica Bank account No. XXXXXXX6516 on or about October 29, 2012;

e.    Five Thousand Fifty Two Dollars and Eighty Cents ($5,052.80) in U.S. Currency from Comerica Bank Account No. XXXXXX8583 on or

about October 29, 2012;

f.   One Hundred Fifty Thousand Dollars ($150,000) in U.S. Currency seized at XXX86 Westmore located in Livonia, Michigan on or about August 21, 2012 ;

g.   One Hundred Eighty Thousand Dollars ($180,000) in U.S. Currency seized at XXX86 Westmore located in Livonia, Michigan on or about August 22, 2012;

h.   Fourteen Thousand Three Hundred Sixty Dollars ($14,360) in U.S. Currency Seized at 7821 Telegraph Road located in Taylor, Michigan on or about August 21, 2012;

i.   Seven Thousand Four Hundred Dollars ($7,400) in U.S. Currency seized from 69XX Falcon Court, West Bloomfield, Michigan on or about August 21, 2012;

j.   Two Thousand Five Hundred Dollars ($2,500) in U.S. Currency seized from 100 E. Big Beaver #905, Troy, Michigan on or about August 21, 2012;

k.   Three Thousand Four Hundred Forty Nine (3,449) Assorted Cellular Telephones and Electronic Devices seized at 7821 Telegraph Road, Taylor, Michigan on or about August 21, 2012 ;

l.   Seven Hundred Ninety Three (793) Assorted Electronic Devices and Equipment Seized at 7821 Telegraph Road, Taylor, Michigan on or about August 21, 2012;

m.   Fifty Nine (59) Assorted Blackberry Cellular Telephones seized at the Detroit Metropolitan Airport Cargo Office in Romulus, Michigan on or about September 13, 2012;

n.   Fifty Five (55) Apple iPhones addressed to Hongshun Technologies in Hong Kong and seized at Detroit Metropolitan Airport in Romulus, Michigan on or about August 20, 2012;

o.   Fifteen (15) Assorted Electronic Equipment Items seized at 69XX

3

Falcon Court, West Bloomfield, Michigan on or about August 21, 2012;

p.      One (1) Samsung Cellular Telephone and One (1) Apple iPhone seized at 69XX Falcon Court, West Bloomfield, Michigan on or about August 21, 2012;

q.      One (1) T-Mobile Bold Model seized at 69XX Falcon Court, West Bloomfield, Michigan on or about August 21, 2012;

r.      Nine (9) Assorted Cellular Telephones seized At 100 E. Big Beaver Road #905, Troy, Michigan;

s.      Eleven (11) Assorted Electronic Equipment Items seized at 207XX Island Lake, Taylor, Michigan;

t.      One (1) Apple iPhone and One (1) Sony Ericsson Cellular Phone seized at 207XX Island Lake, Taylor, Michigan;

u.      One (1) Blackberry Model 9870 seized at 207XX Island Lake, Taylor, Michigan;

v.      One (1) .40 caliber HK Smith & Wesson Handgun, Serial #219006297 seized at 69XX Falcon, West Bloomfield, Michigan;

w.      One (1) .38 caliber Smith & Wesson SPL revolver, Serial #C684065 seized at 69XX Falcon, West Bloomfield, Michigan;

x.      Thirteen (13) Rounds of .40 caliber Ammunition seized at 69XX Falcon, West Bloomfield, Michigan;

y.      Six (6) Rounds of .38 Caliber Ammunition seized at 69XX Falcon Court, West Bloomfield, Michigan;

z.      One (1) .40 Caliber Ammunition Magazine seized at 69XX Falcon Court, West Bloomfield, Michigan;

aa.     One (1) .44 Ruger Revolver, Serial:85-92714 seized at 100 E. Big Beaver Road #905, Troy, Michigan;

bb.    Sixty-Six Rounds (66) of .44 Caliber Gold Dot Ammunition seized at 100 E. Big Beaver Road #905, Troy, Michigan;

cc.    Twenty Rounds (20) of .40 CaliberDPX Ammunition seized at 100 E. Big Beaver Road #905, Troy, Michigan;

dd.    Four (4) Rounds of .44 caliber Remington Ammunition seized at 100 E. Big Beaver Road #905, Troy, Michigan;

ee.    One (1) Firearm Magazine seized at 100 E. Big Beaver Road #905, Troy, Michigan;

ff.    One (1) Glock 23 Firearm, Serial No: SDX263 seized at 207XX Island Lake, Taylor, Michigan;

gg.    One (1) Maadi 7.62x39 Firearm, Serial: CAI01671 seized at 207XX Island Lake, Taylor, Michigan;

hh.    Thirteen (13) Franklin Gun Safes seized at 207XX Island Lake, Taylor, Michigan;

ii.    Forty Five (45) Assorted Household Items/Tools seized at 7821 Telegraph Road, Taylor, Michigan.

The items listed in Paragraph 5(a) through 5(ii) above (as further identified in part in Exhibits 1 through 6) shall be hereafter referred to as the "defendants *in rem*" or the "Subject Property."

6.    The Subject Property was seized by agents and/or officers of the United States Department of Homeland Security, Immigration Customs and Enforcement at various locations within the Eastern District of Michigan.

## STATUTORY BASIS FOR CIVIL FORFEITURE

### Statutory Violations

7.  Title 18, United States Code, Section 1028 prohibits any person from knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law;

8.  Title 18, United States Code, Section 1343 prohibits any person having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

9.  Title 13, United States Code, Section 305 prohibits any person from knowingly failing to file or knowingly submitting false or misleading export information through the Shippers Export Declaration (SED) or the Automated Export System (AES).

10. Title 18, United States Code, Section 2314 makes it a crime to knowingly

transport, transmit or transfer in interstate or foreign commerce any goods or

merchandise having a value of $5,000 or more, knowing the goods or

merchandise to have been stolen, converted or taken by fraud.

11.     Title 18, United States Code, Section 554 makes it a crime to fraudulently or

knowingly export or send from the United States, or attempt to export or send

from the United States, any merchandise, article, or object contrary to any

law or regulation of the United States, or receive, conceal, buy, sell, or in any

manner facilitate the transportation, concealment, or sale of such

merchandise, article or object, prior to exportation, knowing the same to be

intended for exportation contrary to any law or regulation of the United

States.

12.     Title 18, United States Code, Section 981(a)(1)(C) provides that "[a]ny

property, real or personal, which constitutes or is derived from proceeds

traceable to a violation of section . . . 1028 . . . or 1343 of this title or any

offense constituting 'specified unlawful activity' (as defined in section

1956(c)(7) of this title), . . ." is subject to civil forfeiture to the United States.

Transportation of stolen goods (18 U.S.C. § 2314) constitutes a "specified

unlawful activity" pursuant to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C.

§ 1961(1)(B).   Smuggling goods from the United States (18 U.S.C. § 554)

constitutes a "specified unlawful activity" pursuant to 18 U.S.C.

7

§ 1956(c)(7)(D).

13.    Title 19, United States Code, Section 1595a(d), provides that merchandise

exported or sent from the United States or attempted to be exported or sent

from the United States contrary to law, or the proceeds or value thereof, and

property used to facilitate the exporting or sending of such merchandise, the

attempted exporting or sending of such merchandise, or the receipt, purchase,

transportation, concealment, or sale of such merchandise prior to exportation

shall be seized and forfeited to the United States.

## FACTUAL BASIS SUPPORTING FORFEITURE

14.    The Subject Property is forfeitable as property that constitutes or is derived

from proceeds traceable to violations of 18 U.S.C. §§ 2314 (transportation of

stolen goods), 1028 (identity theft), 1343 (wire fraud), 554 (smuggling goods

from the United States); as property involved in money laundering in

violation of 18 U.S.C. §§ 1956 and/or 1957; and/or as merchandise, articles

or items exported or sent from the United States or attempted to be exported

or sent from the United States contrary to law, or property that facilitated the

transportation, concealment, or sale of such merchandise, article or object,

prior to exportation, knowing the same to be intended for exportation

contrary to any law or regulation of the United States.

8

a. The Subject Property consists of U.S. currency, cellular phones, other electronics and goods, in addition to firearms and ammunition. The Subject Property constitutes or is derived from proceeds traceable to the sale of illegally obtained cellular telephones and other electronic equipment purchased through the "fencing" activities of ACE Wholesale. A "fence" is an individual or entity who knowingly buys stolen or fraudulently obtained property for resale in legitimate or illegitimate markets. Additionally, the defendant *in rem* firearms, ammunition, and gun safes protected the merchandise and provided security for and facilitated the unlawful exportation by ACE Wholesale of the illegally obtained electronics.

b. ACE Wholesale was incorporated in the State of Michigan on or about October 5, 2010 with Jason Floarea listed as President and a business address of 207XX Island Lake Drive, Taylor, Michigan. On or about April 7, 2011, Jason Floarea filed an address update with the State of Michigan listing the address for ACE Wholesale as 7821 Telegraph Road, Taylor, Michigan. At all relevant times ACE Wholesale also operated at, 100 E. Big Beaver Road, Suite 905, Troy, Michigan. ACE Wholesale had additional locations in Lincolnwood, Illinois and Atlanta, Georgia.

c. Various types of fraud occur against cell phone service providers such as

9

AT&T, Verizon, T-Mobile and Sprint.   The various types of fraud includes the following:

(1)    Contract fraud is a scheme where individuals obtain legal contracts with the service providers in order to obtain the subsidized phone included in the contract, with no intention of honoring the contract, but instead with the intention of selling the phone to a recruiter or a business willing to purchase new-in-the-box cell phones for high value.   This process defrauds the service provider the actual value of the phone, which was included in the contract at little or no cost to the individual.

(2)    Account Takeover is a fraudulent act where an individual poses as an established business account holder to obtain additional cell phone lines with the intent of obtaining new cell phones.

(3)    Identity Theft is the process of obtaining the identity of another individual and fraudulently opening cell phone contracts in that person's name with the intent of selling the fraudulently obtained cell phone to a recruiter or business willing to purchase the new cell phone.

(4)    Credit Muling is a fraudulent act where an individual enters into a contract with a service provider with the intent to obtain

10

the cell phone at little or no cost. This individual may attempt to open up multiple lines, or often will attempt to open accounts with multiple service providers at the same time, to maximize the number of cell phones they can obtain for later sale to a recruiter or business willing to purchase the new phones for a high value.

(5) A Recruiter or Street Vendor is an individual who seeks out other individuals (Credit Mules) willing to enter into legal contracts with service providers to obtain the little or no cost cell phones. The Recruiters pay the Credit Mules a minimal amount for each new cell phone they are able to obtain. The Recruiter will often drive the Credit Mule to multiple stores in attempt to open multiple accounts. The Recruiter will then sell the new cell phones to a business willing to purchase new cell phones for high value.

d. ACE Wholesale operated as a fencing organization, purchasing stolen and/or fraudulently obtained cell phones and other electronics beginning in approximately late 2010 and continuing through most of 2012.

e. On or about October 16, 2014, Jason Floarea pleaded guilty in the United States District Court for the Eastern District of Michigan (Criminal Case No. 14-20614) to the Unlawful Transportation of Stolen Property, in violation of 18 U.S.C. § 2314. Floarea admitted that on May 7, 2012, he

11

caused ten boxes to be shipped via Federal Express from Romulus, Michigan to several addresses in Hong Kong, China.   The shipment was not entered into the Automated Export System (AES) as required by law. During an outbound border search inspection, Homeland Security Investigations (HSI) agents discovered that the ten boxes contained at least three hundred (300) cellular telephones.   Based upon the identification numbers from the telephones, HSI agents determined that the above referenced telephones were obtained by fraud, using credit muling tactics.   Floarea caused the cellular telephones to be shipped in foreign commerce knowing they were stolen or obtained by fraud.

f.  The illegal scheme underlying Floarea's conviction involved representatives of ACE Wholesale paying cash for cellular telephones and other electronic equipment to persons who illegally obtained cellular telephones through the means of theft, theft by deception, larceny, and the means described in paragraph c above.   ACE Wholesale also wire transferred payments to persons supplying ACE Wholesale with illegally obtained cell phones.

g.  The physical business locations of ACE Wholesale were heavily fortified in a manner not consistent with legitimate cell phone retailers.   The ACE Wholesale locations included security cameras, armed security guards,

12

the presence of firearms and ammunition on the premises, employees working behind bulletproof glass, phones were stored in gun vaults, and employees conducted cash for phone transactions behind bulletproof glass turnstiles. ACE Wholesale fortified their operation in such a manner because it knew its customers included criminals and involved property obtained illegally.

h. ACE Wholesale purchased and shipped hundreds of thousands of cellular phones and other electronics generating millions of dollars in proceeds traceable to crime. For example, during the first quarter of 2012, ACE Wholesale purchased and shipped unlawfully obtained electronics to overseas importers in a volume that generated over $28 million dollars in funds being wire transferred to ACE Wholesale's primary bank account.

i. During the shipping process ACE Wholesale caused the value and other information pertaining to the shipped electronics to be misrepresented so as to evade the export reporting requirements of the Automated Export System ("AES"), in violation of 13 U.S.C. § 305.

j. On or about August 21, 2012, federal search warrants were executed by HSI agents and officers at: 7821 Telegraph Road, Taylor, Michigan; 100 E. Big Beaver #905, Troy, Michigan; 207XX Island Lake, Taylor, Michigan; and 69XX Falcon Court, West Bloomfield, Michigan. These

13

addresses were the business locations of ACE Wholesale, Inc., the residence of an ACE manager, and the residence of Jason Floarea. **The Subject Property seized at these locations on or about August 21, 2012 are specifically identified in Paragraph No. 5, subsections h-l, o-ii**. The Subject Property seized from these locations constitutes or is derived from proceeds traceable to stolen or fraudulently obtained cellular telephones and other electronic equipment, export violations, smuggled goods from the United States, and/or consists of property involved in money laundering, or property facilitating illegal export activity.

k.  On or about October 29, 2012, the **defendant *in rem* $69,000 in U.S. Currency was seized from Comerica Bank Account No. XXXXXX7696** pursuant to a federally authorized seizure warrant.

l.  Sale proceeds from the fencing operation of ACE Wholesale were deposited into Comerica Bank Account No. XXXXXX7696, a business account held in the name of ACE Wholesale, Inc. Proceeds were wire transferred into this account from entities or persons located in several international locations. The funds in this account were then further transferred to other bank accounts, withdrawn in cash or wire transferred to be utilized to purchase more illegally obtained cellular phones, other electronic items, or other goods.

14

m. As a snapshot, between January 2012 and March 2012 approximately
$28,871,235.68 in criminal proceeds was wire transferred into Comerica
Bank Account No. XXXXXX7696.   After wire transfers of proceeds
were received into Comerica Bank Account No. XXXXXX7696, cash
withdrawals were made three to four times a week ranging in amounts
from $50,000 to $350,000.   For instance, on February 15, 2012 a total of
$211,950 was transferred from overseas entities into the Comerica Bank
Account No. XXXXXX7696.   Currency withdrawals from Comerica
Bank Account No. XXXXXX7696 on February 15 and 16, 2012 were
$70,000 and $180,000, respectively.

n. ACE Wholesale also utilized an armored car service to withdraw and
deliver cash to its locations in addition to utilizing employees to make
substantial cash withdrawals from bank branch locations.

o. On or about October 22, 2012, the **defendant *in rem* $259,797.60 was
seized from Suntrust Bank Account No. XXXXXXXXX4909** pursuant
to a federally authorized seizure warrant.

p. Suntrust Bank Account No. XXXXXXXXX4909 was at all times
relevant to the allegations in this complaint a business account held in the
name of ACE Wholesale, Inc.

q. There were significant wire transfers from the main ACE Wholesale

15

Comerica Bank Account No. XXXXXX7696 to Suntrust Bank Account
No. XXXXXXXXX4909. For example, in the month of May 2012 alone
there was a total of approximately $1.1 million transferred from the ACE
Wholesale Comerica account to the ACE Wholesale Suntrust account.

r. Similar to the ACE Wholesale Comerica account ending 7696 the ACE
Suntrust account was heavily withdrawn in cash in order to purchase
more illegally obtained cellular phones and other electronic equipment.
The cash from the ACE Wholesale Suntrust account was delivered by a
Brinks armored car service to ACE Wholesale stores located in Atlanta
Georgia and Lincolnwood, Illinois.

s. On or about October 29, 2012, the **defendant *in rem* $18,860.36 in U.S.
Currency was seized from Comerica Bank Account No.
XXXXXX5407**.

t. Comerica Bank Account No. XXXXXX5407 was at all times relevant to
the allegations in this complaint a business account held in the name of
Ace Wholesale, Inc.

u. There were significant fund transfers between ACE Wholesale Comerica
Bank Account No. XXXXXX7696 to ACE Wholesale Comerica Bank
Account No. XXXXXX5407. For example, on or about May 2, 2012 a
check payable to the Internal Revenue Service ("IRS") in the amount of

16

$474,210 cleared through Comerica Bank Account No. XXXXXX5407. The funds used to present this check were transferred from Comerica Bank Account No. XXXXXX7696 two weeks prior.   Between January 2012 and March 2012, funds totaling $678,294.27 were transferred from Comerica Bank Account No. XXXXX7696 to Comerica Bank Account No. XXXXXX5407.   Funds were also transferred back to Comerica Bank Account No. XXXXX7696 from Comerica Bank Account No. XXXXXX5407.

v. On or about October 29, 2012, the **defendant *in rem* $6,518.02 in U.S. Currency was seized from Comerica Bank Account No. XXXXXXXX6516**.   Comerica Bank Account No. 06823066516 was a personal checking account held in the name of Jason Floarea.

w. Funds traceable to the activities of ACE Wholesale were deposited into Floarea's personal Comerica Account No. XXXXXXXX6516 in the form of payroll and other deposits.   For example, during the time period of January 2012 to March 2012, a total of approximately $19,237.63 was transferred from Comerica Bank Account No. XXXXXX7696 to Comerica Bank Account No. XXXXXXX6516.   Additionally, there was a transfer of funds totaling $25,000 from Comerica Bank Account No. XXXXXX7696 to Comerica Bank Account No. XXXXXXX6516 on

17

April 2, 2012.   On April 23, 2012, there was another transfer of funds
totaling $20,000 from Comerica Bank Account No. XXXXXX7696 to
Comerica Bank Account No. XXXXXXX6516.

x.  On or about October 29, 2012, the **defendant *in rem* $5,052.80 in U.S.
**Currency was seized from Comerica Bank Account No.
XXXXXXX8583**.   Comerica Bank Account No. 9412768583 was
another personal savings account held in the name of Jason Floarea.

y.  Comerica Account No. XXXXXXX8583 received downstream transfers
of funds originating from ACE Wholesale Inc. Comerica Account ending
in 7696. As referenced above, funds were transferred Comerica Bank
Account ending in 7696 to the Floarea's personal account ending in 6516.
Funds were then further transferred from Floarea's personal account
ending in 6516 to Floarea's personal Comerica Account ending in 8583.
For example, on February 2, 2012, $5,000 from was transferred from the
Comerica Account ending in 6516 to the Comerica Account ending in
8583.

z.  On or about August 21, 2012, ICE agents served two (2) federal seizure
warrants on Garda an armored car service located at XXX86 Westmore,
Livonia, Michigan.   Garda was utilized by ACE Wholesale for the
shipment of U.S. Currency constituting funds derived from or traceable to

the sale of illegally obtained cellular telephones and other electronic equipment.   On or about August 21, 2012, the **defendant *in rem* $150,000 in U.S. currency** was seized from Garda.   The next day, on or about August 22, 2013, the **defendant *in rem* $180,000 in U.S. currency** was seized from Garda.   The U.S. currency seized from Garda was intended to be delivered to ACE Wholesale for the purpose of purchasing more illegally obtained electronic equipment, thereby promoting further criminal activity.

aa. On or around August 20, 2012, the **defendant *in rem* Fifty Five (55) Apple iPhones addressed to Hongshun Technologies in Hong Kong** was seized at Detroit Metropolitan Airport in Romulus, Michigan. Officers with Homeland Security Investigations, Customs and Border Protection ("CBP") located at Detroit Metropolitan Airport conducted an outbound customs inspection of certain packages being shipped by ACE Wholesale to foreign destinations.   CBP officers inspected a box addressed to Hongshun Technologies.   The subject box contained the defendant *in rem* 55 Apple I-Phones contained inside their original packaging.   The commercial invoice that accompanied this shipment listed the phones as gifts with a value of $9.09 per unit (phone) and noted the phones were being shipped from HAN's Electronics located in

19

Champaign, Illinois despite the fact that CBP officers determined the subject package was shipped from ACE Wholesale located in Taylor, Michigan.   The defendant *in rem* Fifty Five (55) Apple iPhones addressed to Hongshun Technologies in Hong Kong are derived from or are traceable to proceeds obtained directly or indirectly from stolen or fraudulently obtained cellular telephones and other electronic equipment, export violations, smuggled goods from the United States, or property involved in money laundering.

bb. On September 12, 2012, the **defendant *in rem* Fifty Nine (59) Assorted Blackberry Cellular Telephones** was seized at Detroit Metropolitan Airport Cargo Office in Romulus, Michigan.   The shipment arrived from Venezuala with the consignee listed as ACE Wholesale.   The shipment was manifested "Damage phone for return" with a declared value of $17,595.   The defendant in rem Fifty Nine (59) Assorted Blackberry Cellular Telephones are derived from or are traceable to proceeds obtained directly or indirectly from stolen or fraudulently obtained cellular telephones and other electronic equipment, export violations, smuggled goods from the United States, or property involved in money laundering.

## CLAIM

15.    Plaintiff hereby requests and re-alleges each and every allegation set forth in Paragraphs 1 through 14 above, including the subparagraphs thereunder.

16.    The Subject Property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) as property that constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 2314 (transportation of stolen goods), 1028 (identity theft), 1343 (wire fraud), 554 (smuggling goods from the United States); and/or pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957; and/or pursuant to 19 U.S.C. § 1595a(d) as merchandise, articles or items exported or sent from the United States or attempted to be exported or sent from the United States contrary to law or property that facilitated the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

## COMPANION CASE

17.    Information obtained in conjunction with the investigation of United States vs. Jason Floarea, Criminal Case No. 14-CR-20614 (Honorable Nancy G. Edmunds) reveals that persons involved in that criminal case may also be associated with this civil forfeiture action and that the cases arise primarily

21

out of the same occurrences or transactions.

## RELIEF

Plaintiff, United States of America, respectfully requests that warrants for the arrest of the Defendants *in rem* issue; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

GJON JUNCAJ (P-63256)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9623
Gjon.juncaj@usdoj.gov

Dated:     February 3, 2015

## <u>VERIFICATION</u>

I, Angela Potter, state that I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations. I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other Law Enforcement Agents.

ANGELA POTTER, Special Agent
Homeland Security Investigations

Dated: 2-2-15

23